IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 8, 2022 Session

## STATE OF TENNESSEE v. GLENN BOHANAN, JR.

**Appeal from the Circuit Court for Henderson County**
**No. 20-25-1   Roy B. Morgan, Jr., Judge**

_____

### No. W2021-00242-CCA-R3-CD

_____

Glenn Bohanan, Jr., Defendant, was charged with one count of rape of a child, three counts of rape, and four counts of incest, for events that took place over the span of several years. After a jury trial, Defendant was found guilty of all counts of the indictment and sentenced to an effective sentence of 40 years. Defendant raises the following issues on appeal: (1) the evidence was insufficient to support the convictions for rape of a child in Count 1, rape in Counts 3 and 4, and incest in Counts 5-8 because the victim did not testify specifically that Defendant penetrated her on each occasion; and (2) the sentence is excessive. After a review of the evidence, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Brennan M. Wingerter, Assistant Public Defender – Appellate Division (on appeal); Jeremy Epperson, District Public Defender; Hayley F. Johnson, Assistant Public Defender (at trial), for the appellant, Glenn Bohanan, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant was indicted in January of 2020 by the Henderson County Grand Jury for one count of rape of a child, three counts of rape, and four counts of incest, for incidents involving his adopted daughter that took place over a period of 11 years. The victim was

born in October of 2002.  Defendant adopted the victim after marrying her mother.  At the time of the indictment, the victim was 17 years old.  After a jury trial, Defendant was found guilty on all counts.  Defendant was sentenced to an effective sentence of 40 years.

At trial, the following proof was introduced.  When the victim was around two years old, her mother started dating Defendant.  The victim's mother and Defendant eventually got married and had two children, a boy and a girl.  Defendant adopted the victim in 2008 when the victim was five years old.  It was around this time period that Defendant started abusing the victim.  Defendant traveled quite a bit for his job, and the family lived in several different locations over the years.

The victim testified that the abuse happened "very, very often" when Defendant was home from work.  Her younger brother and sister were typically at home when the abuse took place, but Defendant always "lock[ed] the door" before he "start[ed] to touch" her.  The victim described Defendant's actions as "assault," explaining that Defendant "would start to touch [her]" before putting his hand "up [her] leg and remov[ing] [her] clothes."  Defendant removed the victim's clothing and his own clothing sometimes but not every time.  Defendant typically stood "off the bed . . . in front" of the victim before he "touch[ed her] legs and around [her] vaginal area."  The victim recalled that Defendant sometimes "put his [body] weight" on her to "hold" her down.  Then, Defendant would "put his penis inside [her] vagina and assault [her]."  Defendant also held her arms down during several incidents, and sometimes ejaculated on her leg.  After each incident, Defendant apologized and told her it would "never happen again."  The victim described the incidents as painful and violent even though it "felt like a normal thing" because she "knew it was gonna happen."  Defendant told the victim that she would never see her mother again if she told anyone about the incidents.

The victim first disclosed the abuse to a boyfriend in late 2018.  The victim's relationship with the boyfriend was sexual.  They broke up in early 2019.  After the break-up, the victim's ex-boyfriend posted a nude image of her on Snapchat accompanied by the statement that she "likes it when her dad touches her."  The victim told her mother about the Snapchat image, and the two went to the police to report the nude image.  The victim's mother asked the victim if the statement about her father were true.  The victim finally told her mother about the abuse.

The victim's mother confronted Defendant, who repeatedly apologized.  In a lengthy series of text messages, Defendant never denied the allegations, only denying "penetration."  Defendant admitted that he "made terrible, terrible decisions" and begged her not to take the children.  Defendant threatened to kill himself.

The victim did not immediately report the abuse to the police. A few weeks after the Snapchat incident, Defendant had the victim's mother arrested on some outstanding warrants from Alabama. The victim's mother told the police about the abuse because she was afraid Defendant would try to take her children.

The victim was taken for a forensic interview at the Carl Perkins Center and was given a sexual assault exam. She stated that Defendant raped her several times a month starting when she was five years of age. On most occasions, it was "rape" involving penile-vaginal penetration. There were several occasions on which Defendant put his mouth on the victim's vagina. The medical exam revealed a full transection of the hymen that was indicative of "penetrating trauma" that would be consistent with rape or with a consensual sexual relationship.

The victim described four specific incidents in her testimony at trial. The first instance occurred after Christmas of 2013. The rental property records for the home in which they were living at the time indicated that the family lived there from 2013 to mid-February of 2014. The victim was 11 years old and got a BB gun for Christmas. In what the victim described as "one of the worst times at that house," Defendant put a pillow over her "head" while she was lying on her back and "assaulted her." Defendant was standing between her knees and "touch[ed her] legs and around [her] vaginal area. The State relied on the testimony about this instance for Count 1, rape of a child, and Count 5, incest.

The victim testified about the next incident, around February 11, 2017, when the family was living at another address. Rental property records for that home indicated that the family lived there during this time. A mattress was delivered to the house in February of that year by Rent One. Casey Kathleen Kelly, the store manager at Rent One, had a signed agreement with Defendant's name dated February 11, 2017. Defendant asked the victim to help put the mattress cover on the new mattress. As she was helping, Defendant "came behind [her] and began to touch [her] legs and [her] behind and took off [her] clothes and assaulted [her]." Defendant removed her clothes at some point. The victim was laying on her back on the bed, and Defendant "put his penis inside [her] vagina and assault[ed her]." The victim told the jury, it "hurt." Defendant ejaculated on her legs. This incident related to Count 2, rape, and Count 6, incest.

The victim recalled "Easter shopping" sometime around March or April of 2018. When they returned home, Defendant "came into [the victim's] room and sat on the bed and started talking." Defendant placed his hand on her leg and moved it "progressively higher" before removing her clothes. Defendant "touch[ed] her and "start[ed] to assault" her. On this occasion, Defendant was on top of the victim, with "his arms on the bed or on [her arms] holding them." She could not move. Defendant threatened the victim that if she told her mom, Defendant would see to it that the victim never saw her again. The

victim thought Defendant would try to send her mother to jail based on outstanding warrants. This incident related to Count 3, rape and Count 7, incest.

The victim testified about another incident that took place between September 19 and October 7 of 2018. At this time, the family lived on at another address. Charles Rowsey of the Lexington, Tennessee Utility Department testified that Defendant lived at that address from October 1, 2018 to October 1, 2019. The victim recalled that they had not lived in the house for a long time and that the incident took place "right before [they] went to the beach with [a] good family friend," around the first part of October. The victim had Christmas lights in her room as decoration and testified that Defendant "came in there to see them." He locked the door behind him and "progress[ed] closer and start[ed] to touch [her] leg and then remove [her] clothes and assault[ed] her." The victim was on her back on the bed and Defendant was on top of her. This incident corresponded with Count 4, rape, and Count 8, incest. The victim did not have a boyfriend at that time.

Defendant presented testimony from a former employer, Darryl Hamm, at trial. Mr. Hamm testified that Defendant was home on February 11, 2017, and did not travel until February 13. Mr. Hamm claimed that Defendant asked him to lie about how long he was employed.

Defendant testified that he did not rape or sexually abuse the victim. Defendant insisted that the allegations of rape and abuse came about after a fight he had with the victim's mother on March 3, 2019. The fight was about the victim's dating.

At the conclusion of the proof, Defendant was found guilty of all counts. At a sentencing hearing, the trial court sentenced Defendant to an effective sentence of 40 years at 100%. In Count 1, rape of a child, the trial court sentenced Defendant to 30 years at 100%. For Counts 2-4, rape, Defendant was sentenced to 10 years on each count. For Counts 5-8, incest, Defendant received a sentence of five years on each count. The trial court ordered the sentences in Counts 2-4 and 5-8 to run concurrently, for a total effective sentence of 10 years but ordered the sentence in Count 1 to be served consecutively to the 10-year sentence, for a total effective sentence of 40 years. The trial court based consecutive sentencing on the fact that Defendant committed "multiple sexual offenses against a minor."

The trial court denied a motion for new trial. This motion does not appear in the technical record. Defendant appealed, challenging the sufficiency of the evidence and his sentence.

*Sufficiency*

- 4 -

On appeal, Defendant argues that the evidence is insufficient to support the convictions in Counts 1, 3, 4, 5, 7, and 8[1] because the State failed to prove that sexual penetration occurred. Specifically, Defendant claims that the victim never provided details of the incidents, never used the word "rape" to describe Counts 1, 3, and 4, and never described the "assault" she referred to in her description of what took place on each occasion with the exception of Count 2. The State disagrees, arguing that ample evidence supported the convictions, even though the victim "may not have explicitly stated that [Defendant] inserted his penis into her vagina" on each instance because the victim did not need to use specific words to prove penetration.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's the

---

[1] Defendant does not appear to challenges his convictions in Counts 2 and 6.

- 5 -

defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). A "person commits incest who engages in sexual penetration . . . with a person, knowing the person to be, without regard to legitimacy . . . [t]he person's . . . adoptive child." T.C.A. § 39-15-302(a)(1).

"The occurrence of penetration, even though penetration is statutorily defined, is a question of fact. Thus, if the evidence is such that any rational trier of fact could have found penetration beyond a reasonable doubt, the evidence must be deemed sufficient." *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001). "[T]he testimony of a victim, by itself, is sufficient to support a conviction." *State v. Nance*, 393 S.W.3d 212, 231 (Tenn. Crim. App. 2012) (citing *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)). In order to establish penetration, the State is not required to present "physical" evidence. *See generally State v. Tommie Phillips*, No. W2012-01126-CCA-R3-CD, 2013 WL 6529308, at *1 (Tenn. Crim. App. Dec. 13, 2013), *perm. app. denied* (Tenn. Mar. 25, 2014). Penetration may be established by circumstantial evidence. *See generally State v. Edward William Crandall*, No. E2012-00338-CCA-R3-CD, 2013 WL 11876277, at *1 (Tenn. Crim. App. Mar. 21, 2013). In order to prove penetration, the victim "does not have to use specific words[.]" *State v. Lee Lance*, No. 03C01-9804-CR-00136, 1999 WL 301457, at *5 (Tenn. Crim. App. May 14, 1999), *perm. app. denied* (Tenn. Nov. 22, 1999).

With respect to Count 1, Defendant argues that the victim testified only that Defendant "would touch [her] legs and around [her] vaginal area" and did not testify as to penile-vaginal penetration, the act elected and argued by the State. Similarly, for Count 3, Defendant argues that the victim merely testified that Defendant "would touch [her] and he would start to assault [her]." Defendant acknowledges that the victim testified that both she and Defendant were unclothed and Defendant was on top of her during these acts, but argues that the proof did not support penetration. Finally, for Count 4, Defendant argues that the victim's testimony indicated that Defendant would "start to touch [her] leg and then remove [her] clothes and assault [her]." In a reply brief, Defendant claims the State's brief contained "repeated characterizations of 'rape'" that amounted to "misrepresentations of the proof," pointing to 14 different "mischaracterizations."[2] Defendant also insists that

---

[2] In one particular example of alleged "mischaracterization," Defendant notes that the State's brief says, "[T]he victim was also five years old when [Defendant] began raping her." Defendant claims that the "Actual Record" indicates this allegation came from "hearsay testimony and [a] report of what [the victim] allegedly said during a pretrial interview that was not introduced as evidence." (*Reply Brief of Appellant, Glenn Bohanan, Jr.*, at page 5, filed March 16, 2022). This assertion is inconsistent with the record. This Court's review of the record revealed that Exhibit 9, a report from Dr. Lisa Piercey, was introduced during the testimony of the doctor during a discussion of her interview and examination of the victim at the Madison County Child Advocacy Center. Defendant did not object to the introduction of the exhibit. In the report, Dr. Piercey memorialized the victim's statement that Defendant "has been raping me since I was 5 years old." (Technical Record, Vol. 3, pp 197-98). In our view, the contents of the report are in the

- 6 -

the State conflates the words "rape" and "assault" when referring to the victim's specific testimony and that because the victim was 18 at the time of her testimony, the State was "required" to ask the victim to be more specific with the details of her sexual abuse. Defendant likens the facts of his case to that of *State v. Edward G. Jameson*, No. M2020-00945-CCA-R3-CD, 2021 WL 3360976, at *5-6 (Tenn. Crim. App. Aug. 3, 2021), *no perm. app. filed.* In *Edward G. Jameson*, a panel of this Court reversed two convictions for incest because the defendant was convicted of three counts of statutory rape by an authority figure and eight counts of incest. On appeal, the panel reversed two convictions for incest because the testimony by the victim was "inadequate to demonstrate that any form of penetration occurred in the graveyard" or that "penetration ever occurred in the kitchen" despite the "'entirety of the victim's testimony'" that established the existence of a sexual relationship with the defendant. *Id*. at *5. In *Edward G. Jameson*, the victim specifically testified as follows with regard to the graveyard:

> [State]: Now, did this – to be very specific, what kind of sex was he having with you?
> [Victim]: Oral penetration. Anal.
> [State]: Was he performing these things on you? Were you performing these things on him?
> [Victim]: Both.
> [State]: And did that continue?
> [Victim]: Yes.
> [State]: How frequently in 2006 would you say this happened?
> [Victim]: Very frequently. I mean, it was often.
> [State]: Do you remember any specific places that he had sex with you?
> [Victim]: His mom's or the block house.
> [State]: Do you remember anything else in any parks or public areas?
> [Victim]: A graveyard.
> . . . .
> [State]: Now you said you had sex in the graveyard. Is there anything specific that he said to you about being in the graveyard?
> [Victim]: That I was conceived there.

*Id*. With regard to the incident in the kitchen, the victim in *Edward G. Jameson* testified

> [State]: Has anybody ever walked in on you all?
> [Victim]: His mother, once.

record and are accurately reported by the State in their brief. Counsel for Defendant should be cautious in making such serious allegations in the future.

[State]: And can you tell us about that?

[Victim]: We were in her kitchen, and he sat down at the kitchen table chair and asked me to turn around and sit on him backwards. And I'm not sure how long it lasted, but his mom – we heard a noise[,] and his mom ended up walking in. She didn't catch us, though. I mean to my knowledge, she didn't.

[State]: Did he do anything – did he act any way when she came in?

[Victim]: He was looking out the window when she came in there and said that he'd thought that maybe her brother . . . had fell, or whatever, and he was going to go check[,] and he went over there and checked and came back.

[State]: Was it nighttime?

[Victim]: Yes.

*Edward G. Jameson*, 2021 WL 3360976, at *5-6. Because this Court concluded there was "no evidence indicating that any form of penetration occurred" in the victim's testimony of either of these instances, the convictions for incest were reversed. *Id.*

In our view, the evidence presented herein is distinguishable from the evidence presented in *Edward G. Jameson*. Viewing the evidence in a light most favorable to the State, the victim testified that Defendant "assault[ed]" her on four separate occasions. One occurred around Christmas, one occurred after the delivery of a mattress, one occurred close in time to "Easter shopping," and one occurred near the time the family went to the beach. On each of these occasions, the victim testified to the location of the "assault" and described Defendant's actions, noting that he sometimes took off his clothes, sometimes ejaculated, sometimes touched her on the leg, put a pillow over her face, removed her clothing, and sometimes held her down. While the victim repeatedly used the word "assault" rather than "rape" or "penetration," the State asked the following question to the victim during her testimony to clarify her word usage:

[State]: And I know we keep referring to assault or rape, but unfortunately, I know I've explained this to you, we're going to have to be exact, okay? So what would he do when he was standing in between your legs?

[The victim]: He would put his penis inside my vagina and assault me.

Viewing the evidence in the light most favorable to the state, the victim's response of "he would put his penis inside my vagina and assault me," provided evidence of penetration. This response was a sufficient description of penetration evidence during each incident when the victim used the word "assault." Although more questioning by the prosecutor to reach a response that aligns more squarely with the legal definition of rape for each incident would have been preferable, it was not required. Based on the accurate

instructions given, the jury had full knowledge of what proof was required to constitute the offense of rape. The jury determined that the description of the four "assaults," as described by the victim, involved the penetration needed to support all the rape convictions. We will not second guess the jury's determination.

Additionally, the report from the Child Advocacy Center that was entered into evidence supports the victim's testimony at trial wherein she described each "assault." In the report, Dr. Lisa Piercey indicated that the victim reported "the majority of the events involved 'full rape,' which [the victim] defines as penile-vaginal penetration." We conclude that the evidence was sufficient to support the convictions. Accordingly, Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant argues that his sentence is excessive. Specifically, he takes issue with the trial court's finding that the victim "gave quite detailed testimony during the course of the trial." Defendant claims that the trial court's finding "is not supported by the record" so the "sentencing decision was based on a clearly erroneous assessment of the proof and thus constitutes an abuse of discretion." The State insists that the sentence is appropriate and that the trial court did not abuse its discretion.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar

offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709.

In sentencing Defendant for one count of rape of a child, three counts of rape, and four counts of incest, the trial court noted in mitigation that Defendant had "no prior criminal history" and in enhancement that Defendant "abused a position of public or private trust" because of the relationship between the victim and Defendant. *See* T.C.A. §§ 40-35-113(13); 40-35-114(14). For Count 1, rape of a child, a Class A Felony, Defendant was subject to a Range II sentence of 25 to 40 years with 100 percent release eligibility. T.C.A. §§ 39-13-522(a); 40-35-112(b)(1). For Counts 2-4, rape, a Class B felony, Defendant was subject to a Range I sentence of 8 to 12 years with a 100 percent release eligibility. T.C.A. §§ 39-13-503; 40-13-112(a)(2). For Counts 5-8, incest, a Class C felony, Defendant was subject to a Range I sentence of three to six years at 30 percent. T.C.A. §§ 39-15-302(a)(1); 40-13-112(a)(3). The trial court relied on the proof at trial and the one enhancement factor and one mitigating factor before agreeing with the State's recommended sentences of 30 years for rape of a child, 10 years for rape, and five years for incest. Defendant's sentence is within the range of punishment for his conviction. The trial court properly considered the purposes and principles of sentencing, and the record supports the trial court's findings. The trial court did not abuse its discretion.

*Consecutive Sentencing*

Defendant also challenges the trial court's decision to order partial consecutive sentencing. In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id.* at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)). One of these factors is if the defendant is an offender whose record of criminal activity is extensive. Another factor

is if the defendant is convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim.  T.C.A. § 40-35-115(b)(2), (5).

As relevant to this case, the trial court noted the multiple convictions for sexual abuse of a minor with consideration of the relationship between the two, as well as the time span "based upon the sworn testimony which the [c]ourt gives credibility to" of the undetected sexual activity as well as the residual damage to the victim, noting with particularity the victim's "issues she's had as a result of being a victim."  The trial court ordered that Counts 2-4 would be served concurrently with each other but consecutively to Count 1, 5, 6, 7, and 8, for a total effective sentence of 40 years.  The trial court also noted that Defendant was subject to the Sex Offender Registry as well as lifetime supervision. The trial court did not abuse its discretion by ordering consecutive sentencing.  Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE